IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES JOSEPH POPE, JR., | : Civil No. 1:26-CV-0525 |
| Plaintiff, | : |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| FRANK J. BISIGNANO, Commissioner of Social Security, | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. Introduction

James Pope, Jr. filed an application under Title XVI of the Social Security Act for supplemental security income and for child disability benefits on June 6, 2024. Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Pope was not disabled from his application date through August 28, 2025, the date of the ALJ's decision.[1]

Pope now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a

[1] Tr. 17-36.

conclusion,'"[2] we conclude that substantial evidence supports the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II. Statement of Facts and of the Case

Pope filed for supplemental security income and child disability benefits, alleging disability due to bipolar disorder and major depressive disorder.[3] Pope was 13 years old at the time of his alleged onset of disability, had a limited education, and had no past relevant work.[4]

An ALJ held a hearing on Pope's disability application on July 14, 2025.[5] Pope and a Vocational Expert ("VE") both appeared and testified at this hearing.[6] Following this hearing, on August 28, 2025, the ALJ issued a decision denying the plaintiff's application for disability benefits.[7] The ALJ initially discussed Pope's impairments under the child disability standards, finding that Pope was not disabled prior to

[2] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).
[3] Tr. 95.
[4] Tr. 34, 95.
[5] Tr. 41-84.
[6] *Id.*
[7] Tr. 14-40.

attaining the age of 18.[8] The ALJ then went on to discuss Pope's impairments under the adult disability standards.[9]

The ALJ first concluded that Pope had not engaged in substantial gainful activity since his application date.[10] At Step 2 of the sequential analysis that governs disability claims, the ALJ found that the plaintiff suffered from severe impairments of bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), generalized anxiety disorder, major depressive disorder, and intermittent explosive disorder.[11] He found the plaintiff's migraines to be nonsevere.[12] At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations.[13] Specifically, the ALJ found that Pope suffered from mild limitations in his ability to

[8] Tr. 22-26.
[9] Tr. 27-35.
[10] Tr. 22.
[11] Tr. 22, 27.
[12] Tr. 22-23.
[13] Tr. 27-28.

understand, remember, and apply information and moderate limitations in the other three areas of mental functioning.[14]

Between Steps 3 and 4, the ALJ then concluded that the plaintiff has the residual functional capacity ("RFC") to perform work at all exertional levels but with nonexertional limitations, such as limitations to simple instructions, simple decision-making, occasional workplace changes, avoidance of noise above level 3 intensity, and restrictions on interacting with others.[15] The ALJ considered the medical records, opinion evidence, and the plaintiff's subjective symptoms.[16] Ultimately, the ALJ concluded that the plaintiff was not as limited as he alleged. Having made these findings, the ALJ found at Step 4 that Pope had no relevant past work but found at Step 5 that he could perform the occupations of a laboratory equipment cleaner, clothes folder, and garment sorter.[17] Accordingly, the ALJ found that Pope had not met the

---

[14] *Id.* The remaining three "paragraph 'B'" criteria are interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.
[15] Tr. 29.
[16] Tr. 29-34.
[17] Tr. 35.

stringent standard prescribed for disability benefits and denied his claim.[18]

This appeal followed. On appeal, Pope argues that the ALJ erred by failing to adjudicate his claim under the child disability standards; failing to include concentration, persistence, and pace limitations in the RFC; improperly relying on the plaintiff's activities of daily living; and finding his headaches to be a nonsevere impairment.[19] This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

## III. Discussion

### A. Substantial Evidence Review and the Disability Determination Process

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[20] Substantial

---

[18] Tr. 36.
[19] Doc. 10.
[20] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[21] Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[22] The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[23]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[24] Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ adequately articulated the reasons for his decision.[25] The ALJ is not required to use "magic" words, but rather must discuss the evidence and explain the reasoning behind his or her decision with more than just

---

[21] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
[22] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).
[23] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).
[24] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).
[25] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

conclusory statements.[26] Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[27]

To be eligible for benefits, a claimant must demonstrate that he or she has a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[28] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[29] In making a disability determination, the ALJ follows a five-step evaluation.[30] The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed

---

[26] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).
[27] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).
[28] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).
[29] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).
[30] 20 C.F.R. §§404.1520(a), 416.920(a).

impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[31]

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity ("RFC")—that is, "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[32] The ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[33] Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[34]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from

[31] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).
[32] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).
[33] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).
[34] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

engaging in any past relevant work.[35] If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[36]

B. <u>Legal Benchmarks for the ALJ's Assessment of Medical Opinions</u>

For applications filed after March of 2017, the regulations require ALJs to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.[37] Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.[38] Supportability means "[t]he more relevant the objective medical evidence and supporting

---

[35] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).
[36] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.
[37] 20 C.F.R. § 404.1520c(c).
[38] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).

explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[39] The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[40]

It is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[41] When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."[42] Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[43] On the other hand, in cases where no medical opinion credibly supports the claimant's

---

[39] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).
[40] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).
[41] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).
[42] *Mason*, 994 F.2d at 1066.
[43] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[44]

### C. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility determinations.[45] Our review of those determinations is deferential.[46] However, the ALJ is required to "specifically identify and explain what evidence he found not credible and why he found it not credible."[47] An ALJ should give great weight to a claimant's testimony "only when it is supported by competent medical evidence."[48] As the Third Circuit has noted, while "statements of the individual concerning his or her

[44] *Cummings*, 129 F. Supp. 3d at 214–15.
[45] *See Diaz v. Comm'r,* 577 F.3d 500, 506 (3d Cir. 2009).
[46] *Id.*
[47] *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citations omitted).
[48] *McKean v. Colvin*, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted).

symptoms must be carefully considered, the ALJ is not required to credit them."[49]

In accordance with the Social Security Rulings and Regulations, an ALJ must follow a two-step process to evaluate a claimant's reported symptoms: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms considering the entire administrative record.[50] This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work.[51] To assist in the evaluation of a claimant's subjective symptoms, the Regulations set forth seven factors that may be relevant to the assessment of the claimant's alleged symptoms.[52]

---

[49] *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").
[50] SSR 16-3p.
[51] 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.
[52] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: the claimant's daily activities; the "location, duration, frequency, and

D. <u>The ALJ's Decision is Supported by Substantial Evidence.</u>

Our review of the ALJ's decision denying an application for benefits is deferential; we must simply determine whether the ALJ's decision is supported by substantial evidence in the record.[53] Judged against this deferential standard, we conclude that substantial evidence supported the ALJ's decision in this case.

Pope alleges that the ALJ failed to adjudicate his claim under the child disability standards, as he filed his claim and alleged disability prior to attaining the age of 18.[54] This argument warrants little discussion, as the ALJ explicitly considered Pope's impairments under the child disability standards in the decision.[55] The ALJ found that Pope suffered from several severe impairments, but that none of his impairments met or was the functional equivalent of a listing.[56] As such, the ALJ found that Pope was not disabled under the child disability

intensity" of the claimant's pain or symptoms; the type, dosage, and effectiveness of medications; treatment other than medications; and other factors regarding the claimant's functional limitations.

[53] *Biestek*, 139 S. Ct. at 1154.

[54] Doc. 10 at 4.

[55] *See* Tr. 22-26.

[56] *Id.*

standards.[57] Given that the ALJ discussed Pope's claim under the child disability standards, a remand is not warranted.

Pope next claims that the ALJ failed to properly account for his moderate limitations in concentrating, persisting, and maintaining pace.[58] He contends that the VE testified that an individual who was off task for a certain percentage of time could not maintain employment.[59] But Pope fails to point to any evidence indicating that he would be off task 15 percent or more of the time such that he would be unable to maintain employment per the VE's testimony.

In his decision, the ALJ found a moderate limitation in this area, noting Pope's subjective reports of issues with concentration and completing tasks, as well as mental status findings of a limited attention span.[60] The ALJ also noted, however, that Pope reported an ability to perform household chores such as cooking, laundry, and cutting the grass, and that he reported an ability to shop in stores, play videogames,

---

[57] Tr. 26.
[58] Doc. 10 at 3.
[59] *Id.*
[60] Tr. 29.

go fishing, and ride dirt bikes.[61] The ALJ then limited Pope to simple instructions and simple decision-making to account for a moderate limitation in this area, reasoning that Pope's subjective testimony did not credibly establish greater limitations.[62] To the extent Pope argues that the ALJ improperly relied on his activities of daily living to find him not disabled, an ALJ is permitted to consider a claimant's activities of daily living when assessing credibility.[63] We discern no error with the ALJ's consideration of Pope's subjective complaints.

The ALJ also considered the medical opinion evidence regarding this moderate limitation. He found the opinion of Dr. Amanda Castro, M.D., Pope's treating psychiatrist, only partially persuasive, reasoning that her marked to extreme limitations in this area were not consistent with her own treatment records.[64] The ALJ noted that Dr. Castro's treatment records contained some abnormal mental status findings but

---

[61] *Id.*
[62] Tr. 30.
[63] *Swartz v. Dudek*, Civ. No. 1:24-CV-688, 2025 WL 1311911 at *9 (M.D. Pa. May 6, 2025) (citing *Vega v. Comm'r of Soc. Sec.*, 358 F. App'x 372, 375 (3d Cir. 2009) (nonprecedential)).
[64] Tr. 32.

were otherwise largely unremarkable during the relevant period.[65] He further found the opinions of the state agency consulting providers to be partially persuasive, reasoning that their review of the record supported a moderate limitation in this area of mental functioning, as evidenced by the mental status findings of limited attention span but Pope's reported abilities to engage in hobbies and perform household chores.[66]

We find no error with the ALJ's consideration of Pope's subjective symptoms or the opinion evidence. Rather, the ALJ clearly explained why he found Pope's subjective testimony to be less than credible and why he found the extreme limitations set forth by Dr. Castro unpersuasive. Accordingly, there is no basis for a remand on this issue.

Finally, Pope argues that the ALJ erred in his consideration of Pope's migraine headaches, in that the ALJ should have found his migraines to be a severe impairment.[67] At Step 2, the ALJ determines whether a claimant has a medically severe impairment or combination of

---

[65] *Id.*
[66] Tr. 32-33.
[67] Doc.

impairments.[68] An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities," or if it is "something beyond 'a slight abnormality which would have no more than a minimal effect on an individual's ability to work.'"[69] This Step 2 inquiry is a de minimis screening device used to cast out meritless claims.[70] The claimant bears the burden to show that an impairment should be considered severe.[71]

Here, Pope contends that the ALJ failed to consider evidence that his headaches could interfere with his concentration, attendance, and time on task.[72] But Pope does not point to any evidence that would credibly establish such a limitation. Rather, the evidence indicates that while Pope complained of migraine headaches after suffering from several concussions, his providers prescribed him medication that

---

[68] *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).
[69] 20 C.F.R. 404.1520(c); *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citations omitted).
[70] *McCrea*, 370 F.3d at 360; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).
[71] *Bowen*, 482 U.S. at 146; *Stancavage v. Saul*, 469 F. Supp. 3d 311, 331 (M.D. Pa. 2020).
[72] Doc. 10 at 4.

improved his symptoms.[73] Additionally, the ALJ provided a limitation to avoiding noise above level 3 intensity to account for Pope's headache disorder.[74] Accordingly, we cannot conclude that the ALJ erred at Step 2 in finding Pope's migraines nonsevere.

In sum, we find that the ALJ considered all the evidence and adequately explained the decision for including or discounting certain limitations as established by the evidence. Accordingly, we find no error with the decision and conclude that substantial evidence supported the ALJ's evaluation of this case. As such, this decision will be affirmed.

**IV. Conclusion**

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 21st day of September 2026.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

---

[73] *See* Tr. 431-32, 718, 755, 783, 787, 818.
[74] Tr. 29, 31.